823 So.2d 837 (2002)
Amy W. O'NEILL, Petitioner,
v.
George C. O'NEILL, Respondent.
No. 5D01-3727.
District Court of Appeal of Florida, Fifth District.
August 16, 2002.
*838 Mark P. Rabinowitz, Seymour Benson, and Michael P. Sampson of Holland & Knight, LLP, Orlando, for Petitioner.
John W. Frost and Robert S. Swaine of Frost Tamayo Sessums & Aranda, P.A., Bartow, for Respondent.
CASANUEVA, DARRYL C., Associate Judge.
In this original proceeding pursuant to Florida Rule of Appellate Procedure 9.100(c), Amy W. O'Neill petitions for a writ of certiorari to quash the trial court's order denying her motion for a protective order. Because the trial court's order does not depart from the essential requirements of law, see Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646 (Fla. 2d DCA 1995), we deny the petition.
The parties were married on September 23, 1989, and have five children, all still minors. The O'Neills were divorced on May 15, 2000. During the dissolution proceedings, *839 George C. O'Neill sought his wife's psychological and psychiatric records. Finding that Ms. O'Neill's privacy interest outweighed the need for the records, the trial court at that time denied Mr. O'Neill's request. In the final judgment of dissolution, entered after the parties reached a settlement agreement at mediation, the trial court designated Ms. O'Neill as the primary residential parent for all five children.
Mr. O'Neill began the present action on October 22, 2001, when he filed a verified emergency ex parte petition for temporary modification of child custody. He alleged, inter alia, that his former wife suffered from alcoholism and an addiction to controlled substances, that she had been admitted in early 2001 to a residential treatment center, that she had used a number of illegal substances in the presence of the children, and that on October 18, 2001, she was admitted to the psychiatric ward of a local hospital after making suicidal threats to a friend and saying that she would "take the children with me." Mr. O'Neill also alleged that her alcohol and substance abuse constituted a substantial and material change in circumstances that put the children's safety at risk. In conjunction with the emergency petition, Mr. O'Neill served a notice on his former wife to produce at a hearing all records pertaining to her stay at the treatment center and the hospital's psychiatric ward. In response, Ms. O'Neill moved for a protective order.
Ms. O'Neill's motion for a protective order asserted that Mr. O'Neill's request to produce invaded her privacy rights, violated her psychotherapist-patient privilege, and, furthermore, that neither her mental nor her emotional condition was placed in issue. The trial court denied her the protective order on the ground that it could not properly determine custody of the minor children without vital information about her mental health and substance abuse. The court, therefore, required her to produce treatment center and hospital records that were made for the purpose of diagnosis or treatment of her mental or emotional condition, including alcoholism and other drug addiction.
A petition for certiorari to review a discovery order is appropriate "when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). The reviewing court must first determine whether the petitioner has made a prima facie showing that the order complained of creates irreparable harm. Morgan, Colling & Gilbert, P.A. v. Pope, 798 So.2d 1, 3 (Fla. 2d DCA 2001). Because the petitioner here, Ms. O'Neill, has met this threshold, we must determine whether there has been a departure from the essential requirements of law. City of Oldsmar v. Kimmins Contracting Corp., 805 So.2d 1091, 1092 (Fla. 2d DCA 2002).
Ms. O'Neill contends that the trial court's order departs from the essential requirements of law by violating the statutory psychotherapist-patient privilege set out in section 90.503, Florida Statutes (1998). We reject her contention. As this court has recently noted, the common law did not recognize a psychotherapist-patient privilege. Guerrier v. State, 811 So.2d 852, 854 (Fla. 5th DCA 2002). Because evidentiary privileges were unknown at common law, they are generally looked upon with disfavor. Nat'l Union Fire Ins. Co. of Pittsburgh v. KPMG Peat Marwick, 742 So.2d 328, 331 (Fla. 3d DCA 1999), approved, 765 So.2d 36 (Fla.2000). Accordingly, the statute must be strictly construed. Guerrier, 811 So.2d at 854 n. 2 *840 (citing Ady v. Am. Honda Fin. Corp., 675 So.2d 577, 581 (Fla.1996)).
Subsection (2) of section 90.503 sets forth the initial parameters of the privilege, stating that a
patient has a privilege to refuse to disclose... confidential communications or records made for the purpose of diagnosis or treatment of the patient's mental or emotional condition, including alcoholism and other drug addiction, between the patient and the psychotherapist, or persons who are participating in the diagnosis or treatment under the direction of the psychotherapist. This privilege includes any diagnosis made, and advice given, by the psychotherapist in the course of that relationship.
Subsection (4) then carves an exception to this privilege: there is no privilege for a communication "relevant to an issue of the mental or emotional condition of the patient in any proceeding in which the patient relies upon the condition as an element of his or her claim or defense." Section 90.503 reflects an awareness that "confidentiality is essential to the conduct of successful psychiatric care." Attorney ad Litem for D.K. v. Parents of D.K., 780 So.2d 301, 306 (Fla. 4th DCA 2001).
Section 61.13(2)(a), Florida Statutes (1999), requires a trial court to decide the custody of minor children by ascertaining what is in the child's best interest. In so determining, one factor that must be weighed is the mental health of each parent, although a parent may assert the evidentiary privilege of section 90.503. An exception to the privilege has been recognized in situations where a "calamitous event," such as an attempted suicide, occurs during a pending custody dispute, so that "the mental health of the parent is sufficiently at issue to warrant finding no statutory privilege exists."[1]D.K, 780 So.2d at 309. "What is relevant to the trial court's determination regarding child custody is the parties' present ability and condition." Schouw v. Schouw, 593 So.2d 1200, 1201 (Fla. 2d DCA 1992).
By seeking custody or by seeking to retain custody, a parent does not make his or her mental condition an element of the claim or defense. McIntyre v. McIntyre, 404 So.2d 208, 209 (Fla. 2d DCA 1981). Moreover, one party does not create a calamitous event by merely claiming that the opposing party has an unfit mental or emotional state to have custody of the minor children. In Critchlow v. Critchlow, 347 So.2d 453, 455 (Fla. 3d DCA 1977), however, where the mother was voluntarily committed for treatment of her mental condition, her "mental health [was] vital to a proper determination of permanent custody." Therefore, the court concluded that the then existing statutory patient-psychiatrist privilege could not be invoked under the facts of that child custody case. Id. Similarly, in Miraglia v. Miraglia, 462 So.2d 507, 508 (Fla. 4th DCA 1984), one parent's suicide attempt was found sufficient to vitiate the privilege. These cases have been found to create an implicit waiver of confidentiality because the parent's mental health became relevant to a custody dispute. Leonard v. Leonard, 673 So.2d 97, 99 (Fla. 1st DCA 1996).
In this case, Ms. O'Neill has not actually attempted suicide but has threatened to *841 take her own life as well as her children's. Her threatening remarks were serious enough to alarm her friend, who was immediately prompted to drive Ms. O'Neill to the hospital where she was voluntarily committed. We conclude that such statements, when joined with appropriate supporting behavior, as here, constitute a calamitous event and support an implicit waiver of the statutory privilege. A trial court is not required to wait until a calamitous event becomes a tragedy. Moreover, there was additional testimony demonstrating that Ms. O'Neill was unable to function as a properly nurturing parent. Her residence was in a deplorable condition, despite the fact that she and the children were financially well supported, and she had driven a motor vehicle when she was apparently intoxicated with one of her children as a passenger. These facts and others support the trial court's decision to temporarily change primary residential custody to Mr. O'Neill. Thus, we find that the trial court has not departed from the essential requirements of the law.
Although we deny Ms. O'Neill's petition for certiorari, under the circumstances of this case we are confident that the trial court will take the necessary steps to insure that dissemination of Ms. O'Neill's psychological and psychiatric records is limited and that any violator will be severely sanctioned.
Ms. O'Neill's other grounds for her petition demonstrate no departure from the essential requirements of law and merit no further comment.
We deny the petition for writ of certiorari.
GREEN, OLIVER L., and STRINGER, THOMAS E., Associate Judges, Concur.
NOTES
[1] We recognize that, alternatively, the trial court could have required each party to submit to an independent psychological or psychiatric examination, which, in Ms. O'Neill's instance, might have avoided the instant order on appeal. D.K., 780 So.2d at 309. Although that alternative was clearly available to the trial court, our certiorari jurisdiction does not encompass directing the trial court to order this alternative. See Broward County v. G.B.V. Int'l., 787 So.2d 838 (Fla.2001).