**Christopher BARELLA, Plaintiff,**

v.

**VILLAGE OF FREEPORT and Andrew Hardwick, as both Mayor and in his individual capacity, Defendants.**

No. 12–CV–0348 (ADS)(WDW).

United States District Court, E.D. New York.

Nov. 8, 2013.

Fugazy & Rooney LLP, Glen Cove, NY, by: Amanda M. Fugazy, Esq., Paul P. Rooney, Esq., Sheryl L. Maltz, Esq., Adam C. Weiss, Esq., Of Counsel, for the Plaintiff.

Harris Beach PLLC, Uniondale, NY, by: Keith M. Corbett, Esq., Of Counsel, for the Defendant Village of Freeport.

Rivkin Radler, LLP, Uniondale, NY, by: Kenneth A. Novikoff, Esq., Tamika N. Hardy, Esq., Of Counsel, for the Defendant Andrew Hardwick.

## SHORT ORDER

SPATT, District Judge.

The following facts are drawn from the parties' pleadings for purposes of this order and do not constitute the findings of the Court.

On January 25, 2012, the Plaintiff Christopher Barella (the "Plaintiff") commenced this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., 42 U.S.C. § 1981, 42 U.S.C. § 1983, and the New York State Human Rights Law, Executive Law § 290, alleging that the Village of Freeport (the "Village") and its former Mayor, Andrew Hardwick ("Hardwick") failed to promote the Plaintiff to the position of Chief of Police, or another Command Staff position, on the basis of his race/color and national origin. The Plaintiff also asserts that, during Hardwick's four years as Mayor of the Village, he systematically hired and promoted less qualified and less experienced African–American and Hispanic employees over more qualified and more experienced non-Hispanic White employees.

As of August 14, 2013, the Plaintiff had deposed the Village Attorney, the Chief of Police, the Deputy Chief of Police, a Former Mayor, Hardwick, a Police Lieutenant and the Executive Director of Human Relations. In addition, the Plaintiff was provided with personnel files for the following individuals: Chief of Police Miguel Bermudez, the former Director of Human Resources Stafford Byers, Police Officer Cynthia Cummings, former Police Lieutenant Zina Leftenant, and former Police Officer Debbie Zagaja, and others.

On August 14, 2013, the Plaintiff filed his third motion to compel discovery in this action. In particular, the Plaintiff requested the personnel files for 24 non-party individuals: Richard Brown, Lou DiGrazia, Donovan Gordon, Ismaela Hernandez, Ellen Kelly, Joseph Madigan, Thomas McBride, Cynthia Mitchell, Valerie Montes, Bernadine Quinton, Scott Richardson, James Smith, Ray Straub, Ben Terzulli, Douglas Thomas, Daihana Torres, Norman Wells, Nelson Williams, Carolyn Dean, Angelo Guigliano, John Henry, Conor Kirwan, John Maguire, and Thomas Preston. The Village opposed the motion to compel.

In an order dated August 19, 2013, United States Magistrate Judge William Wall granted the motion to compel. Judge Wall permitted the Defendants to redact personal information from the records demanded.

The Village subsequently filed the present objections to Judge Wall's August 19th order pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. Pr.") 72. First, the Village contends that the Plaintiff failed to articulate a specific need for the production of these 24 personnel files. Second, the Village asserts that Plaintiff could not base his discovery request on a "pattern and practice" claim under Title VII because that statute only authorizes the government to pursue such a theory of liability. Third, the Village maintains that the Plaintiff's discovery request was unreasonably cumulative and duplicative. Fourth, the Village contends that the August

19th 2013 order is violative of federal and state privacy laws. Fifth, the Village insists that it will be prejudiced by this order. The Village also seeks a stay of the underlying discovery order. The Plaintiff opposes the Village's objections. For the reasons set forth, the Court's denies the Village's objections to the August 19, 2013 order and denies the Village's request for a stay of that order.

## I. DISCUSSION

Management of discovery lies within the discretion of the district court, which has "wide discretion in its handling of pretrial discovery." *In re DG Acquisition Corp.,* 151 F.3d 75, 79 (2d Cir.1998) (internal citation omitted); *see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co., Inc.,* No. 08–CV–7508 (SAS), 2011 WL 3738979, at *4 (S.D.N.Y. Aug. 18, 2011). In resolving discovery disputes, the Court is guided by the standards supplied by Fed.R.Civ.P. 26(b). Under Rule 26(b)(1), the scope of discovery is broadly construed to include "any nonprivileged matter that is relevant to any party's claim or defense ... [which is] reasonably calculated to lead to the discovery of admissible evidence." "Relevance," in turn, is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). At the same time, discovery is subject to the limitations set forth in Fed.R.Civ.P. 26(b)(2), which provides, among other things, that discovery should be limited where the Court determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R.Civ.P. 26(b)(2)(C)(iii).

In the context of employment discrimination cases, courts favor "liberal civil discovery rules," giving plaintiffs "broad access to employers' records in an effort to document their claims." *Wards Cove Packing Co. v. Atonio,* 490 U.S. 642, 657, 109 S.Ct.

2115, 104 L.Ed.2d 733 (1989); *see also Chan v. NYU Downtown Hosp.,* No. 03–CV–3003 (CBM), 2004 WL 1886009, at *4 (S.D.N.Y. Aug. 23, 2004) ("the imposition of unnecessary discovery limitations is to be avoided" in employment discrimination claims) (internal citation omitted). Courts have noted that, in such cases, "the scope of discovery must go beyond the specifics of the plaintiff's claim." *Chan,* 2004 WL 1886009, at *4 (citing *Louison v. Blue Cross Blue Shield of Greater New York,* 90–CV–1820 (JFK), 1990 WL 108347 (S.D.N.Y. July 23, 1990) (finding records other than those pertaining to promotion and termination discoverable in a case alleging discriminatory promotion and termination)). Nevertheless, in such cases, the Court must still perform the balancing analysis directed by Rule 26(b)(2)(C)(iii), measuring the plaintiff's need for the requested materials against the burden that production would impose. *See BSN Medical, Inc. v. Parker Medical Assoc.,* No. 10–MC–15 (JFK), 2011 WL 197217, at *2 (S.D.N.Y. Jan. 19, 2011); *Avillan v. Digital Equip. Corp.,* No. 91–CV–8594 (LBS), 1994 WL 198771, at *2 (S.D.N.Y. May 17, 1994). The party objecting to the discovery demands must, with some degree of specificity, illustrate the nature and extent of the burden of production. *See e.g., Avillan,* 1994 WL 198771, at *4.

In *Graham v. Long Island Rail Road,* 230 F.3d 34 (2d Cir.2000), the Second Circuit explained that one method by which the plaintiff may raise an inference of discrimination is to show that she was treated less favorably than similarly situated employees outside of her protected class. *See Graham,* 230 F.3d at 39. The court provided guidance on when employees are similarly situated, stating that the plaintiff must establish that she was "similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Id.* (internal quotations and citation omitted). "Typically, a key determinant as to the employees who are proper comparators with an employment discrimination plaintiff is whether they shared a common supervisor." *Russo–Lubrano v. Brooklyn Fed. Sav. Bank,* CV06–672 (CPS)(VVP), 2007 WL 2126086

(E.D.N.Y. July 23, 2007), citing *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2nd Cir.1997).

In this case, although these 24 individuals were not employed by the Village Police Department, the Plaintiff makes sufficient allegations that he is similarly situated to them because they were all evaluated by the same decision-maker, Hardwick. For example, the Plaintiff alleges that Hardwick replaced Lou Digrazia, a non-Hispanic White individual, with an African–American, Scott Richardson, for the position of Superintendent of Public Works. The Plaintiff asserts that Digrazia had greater qualifications and job experience than did Richardson. Similarly, Hardwick allegedly replaced Joseph Madigan, another non-Hispanic White person, with Richard Brown, an African–American, for the position of Superintendent of the Buildings Department, despite the fact that Madigan had greater qualifications and experience. Also, Hardwick allegedly replaced Bernadine Quinton, another non-Hispanic White individual, with James Smith, an African–American, for the position of tax assessor, based on improper reasons.

While the Plaintiff does not advance a theory of disparate impact, the Second Circuit has held "that an individual disparate treatment plaintiff may use statistical evidence" to support a disparate treatment claim in an employment discrimination case. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir.1990) (citing cases). "If [the Plaintiff] were to uncover information indicating that he was treated differently from other similarly-situated [Hispanic and African–American] applicants, such information might assist him in proving his allegations that the defendants' [actions were], in fact, due to an impermissible motive." *Mitchell v. Fishbein*, 227 F.R.D. 239, 249 (S.D.N.Y.2005).

Moreover, "[t]he purpose of discovery here is, in part, to help identify the universe of proper comparators. Pending discovery, the Court is not in a position to hold that those [24] persons are necessarily improper comparators." *Vuona v. Merrill Lynch & Co., Inc.*, 10 CIV. 6529 PAE, 2011 WL 5553709 (S.D.N.Y. Nov. 15, 2011). Because the 24 personnel records may shed new light on the allegations directed by the Plaintiff at Hardwick, the Court does not consider the Plaintiff's discovery request to be unreasonably cumulative and duplicative.

To be sure, an employer has an "interest in maintaining the confidentiality of employee personnel files." *Duck v. Port Jefferson Sch. Dist.*, No. 07 CV 2224(ADS)(WDW), 2008 WL 2079916, at *4 (E.D.N.Y.2008) (Spatt, J.). However, "there is no rigid rule prohibiting discovery of employee personnel files." *Id.* Indeed, in most cases, a protective order can "appropriately remedy privacy concerns arising from discovery of personnel records." *Id.* (citing *Ladson v. Ulltra East Parking Corp.*, 164 F.R.D. 376, 377 n. 2 (S.D.N.Y.1996)). Here, Judge Wall's order specifically permits the Defendants to redact personal information from the records demanded, thereby attempting to address the Defendants' privacy concerns.

Moreover, the Plaintiff proposes to enter into a confidentiality stipulation to balance the parties' competing interests and claims of prejudice. In this regard, the Court directs the sealing of these records and directs the Plaintiff not to show them to any other person or entity.

Similarly, the Village's reliance on Exemption 6 and 7 to the federal Freedom of Information Act 5 U.S.C. § 552 ("FOIA") is misplaced. Exemption 6 protects information about individuals in "personnel and medical files and similar files" where the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) is limited to "records or information compiled for law enforcement purposes," and protects personal information which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

As to Exemption 6, the Court has already found that Judge Wall's order sufficiently protects the personal information of these 24 individuals. As to Exemption 7(C), none of these individuals is involved in law enforcement. Indeed, the Village's main argument against disclosure is that, unlike the Plaintiff,

these individuals are not employed in the Village Police Department.

Nor is the Village's reference to New York Civil Rights law Section 50–and New York Public Officers law Section 89(2) persuasive. As the Village acknowledges, New York State law does not govern discoverability and confidentiality in federal civil rights actions. *King v. Conde,* 121 F.R.D. 180, 187 (E.D.N.Y.1988).

The Court finds that Judge Wall's August 29, 2013 order was not "clearly erroneous" or "contrary to law" in any way. Therefore the Court affirms that order in all respects.

## II. CONCLUSION

For the reasons set forth, the Court's denies the Village's objections to the August 19, 2013 order and denies the Village's request for a stay of that order. Accordingly, it is hereby

**ORDERED,** that that the Village's objections to Judge Walls's orders dated August 29, 2013 and request for a stay of that order are denied; and it is further **ORDERED,** that the Court directs the sealing of the underlying personnel records and directs the Plaintiff not to show them to any other person or entity.

**SO ORDERED.**